IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

WANDA STRINGER                                                                                      PLAINTIFF

V.                                                                          **LEAD CASE**
                                                     CIVIL ACTION NO. 4:15CV107-NBB-JMV

NORTH BOLIVAR CONSOLIDATED
SCHOOL DISTRICT, ET AL.
                                                                                                 DEFENDANTS

CONSOLIDATED WITH

WANDA STRINGER                                                                                      PLAINTIFF

V.                                                                  CIVIL ACTION NO. 4:15CV108
                                                                    CIVIL ACTION NO. 4:15CV109
                                                                    CIVIL ACTION NO. 4:15CV110

NORTH BOLIVAR CONSOLIDATED
SCHOOL DISTRICT, ET AL.                                                                          DEFENDANTS

**MEMORANDUM OPINION**

Presently before the court is the defendants' motion for summary judgment. Upon due consideration of the motion, response, exhibits, and applicable authority, the court is ready to rule.

Procedural History

The plaintiff, Wanda Stringer, brought this employment discrimination action against her former employers, North Bolivar Consolidated School District ("NBCSD"), Mound Bayou Public School District ("MBPSD"), their Boards of Trustees, and a number of individual defendants, alleging claims of discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, the Equal Pay Act, and state

law claims for tortious interference with her employment contract and business relationships. The plaintiff spread these claims over four separate actions arising from separate charges with the Equal Employment Opportunity Commission ("EEOC"). In the first complaint, the plaintiff alleges that the defendants (1) constructively discharged and terminated her in violation of the ADA (Count I), (2) retaliated against her in violation of the ADA (Count II), (3) individually tortiously interfered with her employment contract (Counts III and V), and (4) discriminated against her based on her disability (Count IV). The plaintiff's second complaint, which she amended, alleges that the defendants (1) retaliated against her for filing an EEOC charge based on violations of Title VII (Count I), (2) retaliated against her for filing an EEOC charge based on violations of the ADA (Count II), (3) discriminated against her on the basis of her gender (Count III), (4) individually tortiously interfered with her employment contract and business relationships in retaliation for her filing EEOC charges (Count IV), and (5) discriminated against her in violation of the Equal Pay Act in retaliation for her filing an EEOC charge. The plaintiff's third complaint, which the plaintiff amended, alleges that the defendants (1) retaliated against her in violation of Title VII (Count I), (2) discriminated against her based on her gender (Count II), (3) interfered with her contract by failing to advertise the Deputy Superintendent position at NBCSD (Count III), (4) individually tortiously interfered with the plaintiff's contract by demoting her (Count IV), and (5) individually tortiously interfered with her contract by denying her the opportunity to apply for the Deputy Superintendent position (Count VI). In the fourth complaint, which she amended, the plaintiff alleges that the defendants (1) failed to accommodate her disability, visual impairment caused by glaucoma, and reassigned her to another position in violation of the ADA (Count I), (2) retaliated against her for filing an EEOC

charge by this reassignment in violation of the ADA (Count II), (3) individually tortiously interfered with her contract by retaliating against her for filing an EEOC charge, failing to accommodate her disability, and discriminating against her based on her disability (Count III). On motion of the defendants, the court consolidated these four cases into the above-captioned lead case, 4:15-cv-00107-NBB-JMV.

Factual History

The plaintiff was hired in 1992 by then MBPSD superintendent Defendant William Crockett as a teacher at John F. Kennedy High School ("JFK"). Defendant Crockett recommended that the plaintiff be promoted to serve as principal of JFK in 2007. In July 2014, the NBCSD was formed from the mandatory consolidation of the North Bolivar School District ("NBSD") and the MBPSD. Defendant Johnnie Vick, who was principal of L.T. Montgomery Elementary School in the former MBPSD, was appointed as superintendent of the newly formed consolidated school district.

On February 27, 2014, MBPSD Superintendent Crockett issued a non-renewal letter to the plaintiff for the upcoming 2014-2015 academic year because her administrator's certification was to expire on June 30, 2014. The MBPSD board voted not to renew the plaintiff's employment contract for this reason. After the plaintiff renewed her administrator's certification, however, she was offered an employment contract for the 2014-2015 academic year as principal of JFK under the newly formed NBCSD with a salary of $71,500.

The 2014 consolidation of the two school districts resulted in a student population of approximately 1,200 students and approximately 200 employees for the 2014-2015 academic year. The Mississippi Department of Education ("MDE") recommended that the NBCSD hire a

Deputy Superintendent to assist in the transition and the development of a new organizational structure and to help meet the increased operational demands of a larger school district. The Superintendent position was awarded to Defendant Vick. The plaintiff was aware that NBCSD was accepting applications for the Superintendent position, but she chose not to apply. She testified that she was unaware of the Deputy Superintendent position until it was filled and asserts that this information was intentionally kept from her so that she would not apply. Superintendent Vick alleges that Defendant Crockett was chosen based on the MDE's strong recommendation that the district hire a Deputy Superintendent with experience in overseeing an entire school district.

The plaintiff is disabled due to visual impairment caused by glaucoma. In July 2014 and again in September 2014, she wrote a letter to Vick and the NBCSD requesting, among other things, that Shawneequa Beal, then a "Lead Teacher" at JFK, be promoted to assistant principal and share the plaintiff's duties and responsibilities. In light of the plaintiff's disability, Superintendent Vick gave the plaintiff written permission to utilize Ms. Beal in any way she felt necessary, as Ms. Beal's position, formerly funded by federal monies, was now completely funded by Defendant NBCSD, and thus there were no longer limitations on the type of work she could perform. The plaintiff, however, wanted Ms. Beal to be placed in the position of assistant principal to assist with administrative duties. Vick did not comply with this request. Despite being advised by Vick to use Ms. Beal as needed, the plaintiff refused to allow Ms. Beal to perform any administrative tasks because she was not designated as an assistant principal on the MDE Personnel Summary Report.

Under the organizational structure of the newly-formed NBCSD, the Alternative and Vocational Schools were consolidated, and it was determined that a director would be hired to manage these two schools. According to the defendants, JFK had many disciplinary issues at the beginning of the 2014-2015 academic year which prompted complaints from the community and parents. Vick asserts that while considering the plaintiff's qualifications and in an effort to address the disciplinary issues at JFK, he recommended to the NBCSD board that the plaintiff be reassigned to the position of Alternative and Vocational School Director. This position carried comparable duties and responsibilities to the plaintiff's principal position, and she was to be paid the same contract salary she received as principal. As such, the defendants assert that this reassignment was a lateral transfer. Further, in executing her renewed contract, the plaintiff agreed that she could be reassigned to any position for which she held a valid license. Defendant Vick informed the plaintiff in writing on December 16, 2014, that she would be reassigned to the position of Director of the Alternative and Vocational School. The plaintiff was scheduled to assume her new position on January 5, 2015. Rather than report to work on that date, the plaintiff submitted her Notice of Resignation, to become effective on January 26, 2015, and she took three weeks of paid vacation leave. The NBCSD board voted to accept the plaintiff's resignation on that date.

Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

## Analysis

*ADA Discrimination Claim*

"The ADA prohibits an employer from discriminating against a 'qualified individual with a disability on the basis of that disability.'" *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting 42 U.S.C. § 12112(a)). Where there is no direct evidence of discrimination, as is the case here, a plaintiff may rely on circumstantial evidence to support her claim and must proceed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Id.* Under *McDonnell Douglas*, the plaintiff must first make a prima facie showing of discrimination, and to do so she must prove (1) that she has a disability, (2) that she was qualified for the job; and (3) that she was subject to an adverse employment decision because of her disability. *EEOC v. LHC Group, Inc.*, 773 F.3d at 697.

The defendants do not contest that the plaintiff is disabled due to her visual impairment disability. They deny, however, that they discriminated against the plaintiff, and they assert that they provided the plaintiff with a reasonable accommodation for her disability by assigning Ms. Beal to assist her in any way necessary.

6

The plaintiff alleges that her non-renewal notice, a letter regarding her failure to notify the district of her absence on a particular date, a letter regarding her inappropriate behavior at a NBCSD meeting, and the defendants' refusal to promote Ms. Beal to assistant principal are evidence of the defendants' discrimination against her due to her disability.

The plaintiff's argument misses the mark for a number of reasons. First, the plaintiff has offered no evidence in support of her claim that any of the various alleged discriminatory acts were due to her disability or her request for an accommodation. It is clear that the plaintiff bases her ADA claims on her conclusory belief that she suffered discrimination because of her disability. "It is well settled, however, that a complainant's own subjective belief of discrimination, no matter how sincere, cannot alone serve as a basis for judicial relief." *Moore v. McCullough*, 351 F. Supp. 2d 536, 541 (N.D. Miss. 2005) (citing *Marks v. St. Landry Parish Sch. Bd.*, 75 F. App'x 233 (5th Cir. 2003)). Lacking evidence of causation, the plaintiff's ADA claims must fail, but lack of causation is not the only shortcoming of the plaintiff's claims.

The plaintiff also fails to allege an actionable adverse employment action. "In the context of discrimination claims under both Title VII and the ADA (or Rehabilitation Act), the Fifth Circuit has limited adverse employment actions to acts which affect compensation, duties, and benefits." *Smith v. Potter*, 629 F. Supp. 2d 644, 651 (S.D. Miss. 2009). The plaintiff must, therefore, "show that she was subject to an ultimate employment decision, such as hiring, granting leave, discharging, promoting, or compensating. *Id.* The plaintiff sets forth a number of instances which she asserts are adverse employment actions, but her assertions are incorrect.

First, the plaintiff cites the non-renewal letter she received from Superintendent Crockett as evidence of an adverse employment action. In February 2014, the plaintiff had not obtained

7

the necessary training requirements for renewal of her administrator's certification, which was to expire on June 30, 2014. Superintendent Crockett advised the plaintiff that her employment contract would not be renewed due to the impending expiration of her administrator's license. As soon as the plaintiff received the necessary training for an updated administrator's certification, however, she was offered an employment contract for the 2014-2015 academic year.

Second, on October 10, 2014, the plaintiff was absent from her employment without notifying Superintendent Vick. When she returned to work, Vick advised her in writing of the importance of notifying him directly of her absence because of the nature of the responsibilities of the principal of a high school. This written notification, however, had no impact on the terms and conditions of the plaintiff's employment and was a simple reminder to provide notice in the event of future absences – not an adverse employment action.

Third, during the October 27, 2014 NBCSD board meeting, the plaintiff attempted to address the board regarding personnel issues though she had not requested to be part of the meeting agenda. Superintendent Vick then counseled the plaintiff regarding the proper protocol for handling personnel matters and encouraged her to communicate with him regarding these matters so that he could properly include her on a school board meeting agenda.

Finally, Defendant Vick informed the plaintiff in writing on December 16, 2014, that she would be reassigned to the position of Director of the Alternative and Vocational School. Despite the fact that her salary did not change and her duties and responsibilities were comparable to her position as principal of JFK, the plaintiff alleges this reassignment was an adverse employment action. Again, the plaintiff is incorrect. The defendants assert that this

reassignment was a lateral transfer, and the court agrees, considering the plaintiff's salary remained the same and her duties and responsibilities were similar to her previous position as principal; and significantly, in executing her renewed contract with NBCSD, the plaintiff agreed that she could be reassigned to any position for which she held a valid license.

None of the instances cited by plaintiff and set forth above resulted in the plaintiff's demotion, discharge, leave denial, or pay reduction. Having suffered no actionable adverse employment action, the plaintiff cannot make the requisite prima facie showing, and her ADA claim of discrimination must be dismissed.

Likewise, the plaintiff's claim of failure to accommodate under the ADA is without merit. While the ADA requires employers to make "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position,"[1] "the ADA doe not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 698 (5th Cir. 2014). An employer must provide a reasonable accommodation, which is one that "provide[s] the qualified individual with a disability with an equal employment opportunity, that is, 'an opportunity to attain the same level of performance, or to enjoy the same level of benefits and privileges of employment, as are available to the average similarly situated individual without disability.'" 29 C.F.R. § 1630.9. The employer is not required to provide the employee with her preferred accommodation but only a reasonable accommodation for the

---

[1] 29 C.F.R. § 1630.2(o)(1)(ii).

employee's known disability. *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 164 (5th Cir. 1996). Although the plaintiff preferred an assistant principal, the defendants satisfied the ADA by providing a reasonable accommodation in designating Ms. Beal to assist the plaintiff in any way necessary. The court finds that the defendants are entitle to judgment as a matter of law on the plaintiff's ADA discrimination claim.

*Retaliation Claims*

Both the ADA and Title VII prohibit discrimination against an employee who has opposed any act or practice made unlawful by either statute or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statute. 42 U.S.C. § 2000e-3(a) (Title VII); 42 U.S.C. § 12203 (ADA). To establish a prima face case of retaliation under either statute, a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-67 (5th Cir. 2007); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301. The *McDonnell Douglas* framework applies to retaliation claims under both the ADA and Title VII. *See Matthews v. City of West Point, Miss.*, 863 F. Supp. 2d 572, 592 (N.D. Miss. 2012); *Love v. Baptist Mem'l Hosp. N. Mississippi, Inc.*, No. 2:10CV176-SA-JMV, 2012 WL 4465569, at *1, *5 (N.D. Miss. Sept. 25, 2012).

In addition to discrimination impacting the terms and conditions of employment, an adverse employment action in a retaliation context also includes actions that would dissuade a reasonable worker from making or supporting a charge of discrimination. *See, e.g., McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (citing *Burlington Northern & Santa Fe*

*Railway Co. v. White*, 548 U.S. 53 (2006)). While the definition of "adverse employment action" is more expansive in a retaliation context, the facts set forth by the plaintiff still do not rise to the level of such action. At most, the plaintiff has suffered from disciplinary actions in the form of coaching or counseling. The Fifth Circuit has held that negative evaluations or disciplinary warnings – including those in the form of coaching or counseling – without attendant changes in the terms and conditions of employment are not ultimate employment decisions. *See Carthon v. Johnson Controls, Inc.*, 100 F. App'x 993, 998 (5th Cir. 2004). Further, the counseling the plaintiff received from Superintendent Vick regarding her absence and her actions at the school board meeting does not even appear to be in the nature of a disciplinary warning or negative evaluation but simply helpful instruction and a reminder about established guidelines and policies. The court finds that the plaintiff's retaliation claims are subject to summary judgment in the defendants' favor.

*Constructive Discharge*

The plaintiff alleges that she was constructively discharged from her employment. A plaintiff may demonstrate constructive discharge by "offer[ing] evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994). To determine whether a reasonable employee would feel compelled to resign, the court looks for the following factors: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment

11

on terms less favorable than the employee's former status. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). The plaintiff must prove "a greater degree of harassment than that required by a hostile environment claim." *Id.* "Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge . . . ." *Id.*

The plaintiff here relies upon the same instances of alleged intolerable working conditions to establish constructive discharge as she set forth in her attempts to establish the claims addressed above; so the court will not revisit those alleged incidents here. None of the actions alleged by the plaintiff fall under the seven factors evidencing constructive discharge listed by the Fifth Circuit in *Brown*. For this reason, the court finds that the plaintiff's claim of constructive discharge is without merit and must be dismissed.

*Title VII Sex Discrimination*

The plaintiff also brings a claim against the defendants for sex discrimination in violation of Title VII. In the absence of direct evidence of discrimination, a plaintiff's Title VII claim of sex discrimination is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). Under this familiar framework, the plaintiff must first establish a prima facie case of discrimination by demonstrating "(1) that the employee is a member of a protected class; (2) that he sought and was qualified for the position; (3) that he was rejected for the position; and (4) that the employer continued to seek or promoted applicants with the plaintiff's qualifications." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). The plaintiff may also show that she was treated less favorably than were similarly-situated individuals who are outside the protected class. *Brinson v. Barden Mississippi Gaming, LLC*, No. 2:03CV239-D-A, 2007 WL

927756, at *1, *2 (N.D. Miss. Mar. 26, 2007). Once the plaintiff has established a prima facie case, "an inference of intentional discrimination is raised, and the burden of production shifts to the employer, who must offer an alternative nondiscriminatory explanation for the adverse employment action." *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). If the defendant can set forth a legitimate nondiscriminatory reason for its action, the burden then shifts back to the plaintiff who must show at "a new level of specificity" that the explanation is merely a pretext for discrimination. *Thornbrough v. Columbus and Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985), *abrogated on other grounds by St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 513 (1993).

The plaintiff alleges that the defendants discriminated against her based on sex in the selection process for the NBCSD Deputy Superintendent position. She contends that the defendants did not advertise the position in an effort to keep her from applying for the job. The defendants assert that the MDE strongly recommended that the defendants select a Deputy Superintendent with school district-wide experience to assist with the transition and consolidation of the two districts. Superintendent Vick recommended the appointment of Defendant William Crockett based on his experience as the former superintendent of the MBPSD. The plaintiff does not have district-wide experience (though the court notes she would have gained such experience had she continued her employment with NBCSD and accepted the reassignment to the Alternative and Vocational School). To satisfy the "similarly situated" prong of the *prima facie* case, the plaintiff's circumstances must be nearly identical to those of the non-protected class members. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995). If a difference between the plaintiff and the comparator "accounts for the difference in

treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis." *El-Bawab v. Jackson State Univ.*, No. 3:11CV553-DPJ-FKB, 2013 WL 3884128, at *7 (S.D. Miss. July 26, 2013). The plaintiff cannot establish the fourth prong of a *prima facie* case since the defendants appointed a person more qualified than the plaintiff, as Vick, unlike the plaintiff, had the necessary district-wide experience which the MDE had strongly encouraged the NBCSD to consider. The court finds that the plaintiff's Title VII sex discrimination claim should be dismissed for the plaintiff's inability to establish a *prima facie* case. The court's analysis could end here, but the court will also address whether the plaintiff can show that the defendants' proffered non-discriminatory reasons for its actions are pretext for discrimination.

*Pretext*

Assuming *arguendo* that the plaintiff could establish a *prima facie* case of discrimination or retaliation, the defendants are nevertheless entitled to summary judgment because the plaintiff has not shown that she can prove pretext. Once an employer articulates a legitimate, non-discriminatory reason for its action, the burden then shifts back to the plaintiff to prove that the employer's proffered reason is false and that intentional discrimination was the actual reason for the employer's action. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 153 (2000). Evidence of pretext is insufficient where the plaintiff has created only a weak issue of fact as to whether the employer's reason is untrue and there is "abundant and uncontroverted independent evidence that no discrimination occurred." *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002).

The plaintiff has come forth with only conclusory allegations in an effort to show that the defendants' proffered reasons for their actions are a pretext for discrimination or retaliation. "It is well settled that a complainant's own subjective belief of discrimination, no matter how sincere, cannot alone serve as a basis for judicial relief." *Moore v. McCullough*, 351 F. Supp. 2d 536, 541 (N.D. Miss. 2005) (citing *Marks v. St. Landry Parish Sch. Bd.*, No. 02-31217, 2003 WL 22080747, at *2 (5th Cir. Sept. 9, 2003)). "[T]he plaintiff's assertion of pretext must rely upon sufficiently specific, substantive reasons beyond self-serving, subjective, or speculative allegations." *Murphree v. Potter*, 226 F. Supp. 2d 826, 835 (N.D. Miss. 2002) (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996)). As the defendants note, the plaintiff never even received an actual disciplinary warning or a bad review. She never suffered an adverse employment action. The actions by the defendants which the plaintiff complains were discriminatory or retaliatory were neither. They were legitimate non-discriminatory business reasons, and the plaintiff has failed to show that they were pretext for discrimination or retaliation.

*Equal Pay Act*

To establish a *prima facie* claim under the Equal Pay Act, the plaintiff must demonstrate that the employer compensates employees of the opposite sex differently for the same work. *King v. Univ. Healthcare Sys., LC*, 645 F.3d 713, 723 (5th Cir. 2011). Specifically, a plaintiff must show: (1) that her employer is subject to the Act; (2) that she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) that she was paid less than the employee of the opposite sex providing the basis of comparison. *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993). If the plaintiff meets her initial burden and

establishes a *prima facie* case, the employer must then provide a justification for the pay differential. *Sauceda v. Univ. of Texas at Brownsville*, 958 F. Supp. 2d 761 (S.D. Tex. 2013).

Such a justification is unnecessary in the present case, however, as the plaintiff has failed to show that she can establish a *prima facie* case under the Equal Pay Act. The plaintiff has identified two individuals, Lisa Davis and Jared Watson, who she alleges were principals who were paid higher salaries than the plaintiff's. Both Davis and Watson were former principals of Broad Street High School who left prior to consolidation of the two school districts. Neither was ever employed by NBCSD. Further, Davis would not qualify as a comparator under the Equal Pay Act in the first instance since she is not of the opposite sex of the plaintiff. Likewise, the two NBCSD employees the plaintiff has identified as comparators, Linda Robinson and Bobbie Moore, are both women and cannot serve as comparators to establish the plaintiff's Equal Pay Act claim. The defendants are, therefore, entitled to summary judgment on this claim.

*State Law Claims*

The plaintiff also brings certain state law tort claims against the defendants, including tortious interference with her employment contract and business relationships. The Mississippi Tort Claims Act ("MTCA") is "the exclusive route for filing suit against a governmental entity and its employees." *City of Jackson v. Sutton*, 797 So. 2d 977, 980 (Miss. 2001). "Any claim filed against a governmental entity and its employees must be brought under this statutory scheme." *Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So. 2d 1234, 1236 (Miss. 1999). Mississippi's statutory definition of "political subdivision" includes school districts. Miss. Code Ann. § 11-46-1(i). Mississippi courts routinely hold that a school district is a political

16

subdivision consistent with the MTCA's definition. *Black v. North Panola Sch. Dist.*, 461 F.3d 584, 597 (5th Cir. 2006). *See, e.g., Lang*, 764 So. 2d at 1236. The MTCA provides that

> [a]n employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted, fraud, malice, libel, slander, defamation, or any criminal offense.

Miss. Code Ann. § 11-46-7(2). Because all defendants were acting within the course and scope of their employment within the statutory meaning of that phrase, they are shielded from the plaintiff's state law tort claims by the MTCA. Miss. Code Ann. § 11-46-7(2) ("[N]o employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties."). Further, the plaintiff failed to comply with the MTCA because she did not serve a mandatory notice of claim prior to filing this action. "[A]ny person having a claim under [the MTCA] shall proceed as he might in any action at law or in equity, except that at least ninety (90) days before instituting suit, the person must file a notice of claim with the chief executive officer of the governmental entity." Miss. Code Ann. § 11-46-11(1).

The court finds that the plaintiff's claims are barred by the MTCA, but assuming *arguendo* the claims could clear the aforementioned procedural hurdles, the claims would fail on the merits as well. The plaintiff's employment contract was not breached or terminated. The plaintiff voluntarily chose to resign her position with the NBCSD. Neither the NBCSD or the other defendants took any action to impede the plaintiff's contract, which was fully in effect when the plaintiff chose to resign from her employment. The court finds that no genuine issue of material fact exists as to the plaintiff's state law claims, and those claims must be dismissed as a matter of law.

Conclusion

For the foregoing reasons, the court finds that the defendants' motion for summary judgment is well taken and should be granted. A separate order in accord with this opinion shall issue this day.

This, the 15th day of March, 2017.

 /s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**